# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| Headwater Research LLC, | CASE NO.   2:25-cv-00965 |
| *Plaintiff,* | |
| vs. | **Complaint for Patent Infringement** |
| TENCENT HOLDINGS LIMITED, | **JURY DEMANDED** |
| *Defendant.* | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Headwater Research LLC ("Headwater") files this complaint against Defendant Tencent Holdings Limited ("Defendant" or "Tencent"), alleging infringement of U.S. Patent Nos. 9,198,117, 9,615,192, and 10,321,320. Defendant infringes Headwater's patented technology by using push messaging for Defendant's mobile applications offered for sale and/or sold and/or monetized in the United States and supplied to customers in the United States. For example, the Accused Instrumentalities include Defendant's mobile applications and their use of push messaging technology and a push messaging service, such as Firebase Cloud Messaging, for push messaging in the United States to Defendant's mobile applications, such as PUBG Mobile or WeChat.

## BACKGROUND

1.      This complaint arises from Defendants' infringement of the following United States patents owned by Headwater, each of which relate to wireless communications technology: United

States Patent Nos. 9,198,117 ("the '117 patent"), 9,615,192 ("the '192 patent"), and U.S. Patent No. 10,321,320 (the "'320 patent") (collectively, the "Asserted Patents").

2.      Dr. Gregory Raleigh—the primary inventor of the Asserted Patents—is a world-renowned scientist, inventor, and entrepreneur, with over 25 years of executive experience in several technology sectors including networking, cloud software, consumer services, wireless and military systems. Dr. Raleigh holds Ph.D. and Masters degrees in Electrical Engineering from Stanford University, and a BS in Electrical Engineering from Cal Poly San Luis Obispo. He is the inventor of over 350 issued U.S. and international patents in several fields including radio systems and components, radar, mobile operating systems, cloud services, IoT, networking, consumer electronics, radiation beam cancer therapy and medical imaging.

3.      Dr. Raleigh has a long and distinguished record of significant contributions and advancements in wireless communications technology. His inventions, companies, and products have profoundly and positively impacted virtually every aspect of the mobile device and communications market. In 2005, Dr. Raleigh was named one of the "50 most powerful people in networking" because of his discoveries in wireless communications technology, and his work in multiplying the capacity of a radio link using multiple transmission and receiving antennas to exploit multipath propagation was described as the "most important wireless technology in the works." *See* https://www.networkworld.com/article/2316916/the-50-most-powerful-people-in-networking.html?page=2.

4.      In 1996, while at Stanford University, Dr. Raleigh presented the first mathematical proof demonstrating that multiple antennas may be used with special signal processing techniques to transmit multiple data streams at the same time and on the same frequency while in the presence of naturally occurring multipath propagation. Dr. Raleigh's work at Stanford has been widely

adopted in modern multiple-input and multiple-output ("MIMO") radio communication and implemented in major wireless communication standards including 4G and 5G. *See, e.g.*, https://en.wikipedia.org/wiki/Gregory_Raleigh.

5.      Dr. Raleigh's groundbreaking work solved problems that had existed in wireless communication since the late 1800s and overturned a century of research and practice in the fields of radio science and wireless communication theory. His work revealed that a new class of MIMO signal processing architectures would allow wireless devices to transmit multiple data streams at the same time on the same frequency thereby multiplying the information-carrying capacity of wireless networks.

6.      Based on his discoveries, Dr. Raleigh co-founded Clarity Wireless to develop smart antenna products incorporating the advances of his MIMO signal processing architecture, and obtained patents now used in 4G and 5G cellular and Wi-Fi standards. Field trials of the smart antennas developed by Clarity Wireless demonstrated performance significantly above anything else contemplated at the time and continue to set standards for multipath broadband wireless access links. Shortly after those field trials, Cisco acquired Clarity in 1998 and hired Dr. Raleigh to continue to commercialize these technologies.

7.      After leaving Cisco, Dr. Raleigh founded Airgo Networks to develop the world's first MIMO wireless chipsets, networking software, reference design systems and commercial OEM products. Airgo Networks's chipset products significantly improved the speed and reliability of Wi-Fi, leading to the adoption of its technology as the core of Wi-Fi radio standards since 2006, and adoption of the chipsets into products sold across the globe. In 2006, Qualcomm acquired Airgo Networks and hired Dr. Raleigh to continue to commercialize these technologies. The Airgo team at

Qualcomm spearheaded the creation of Wi-Fi standards and developed the first Qualcomm Wi-Fi chips for cell phones.

8.     Dr. Raleigh's innovations at Clarity Wireless, Cisco, Airgo Networks, and Qualcomm, resulted in the widespread adoption of his technologies in a multitude of cellular and Wi-Fi standards, such as LTE, WiMAX, 802.11n, 802.11ac (Wi-Fi 5), as well as 802.11ax (Wi-Fi 6).

9.     After successfully founding and selling Clarity Wireless and Airgo Networks to Cisco and Qualcomm, respectively, Dr. Raleigh shifted his focus from solving radio-centric problems to solving problems in how wireless services are provided to consumers. Dr. Raleigh foresaw significant data demand problems presented by the advent and adoption of smartphones. He sought to solve these data demand problems by improving end-user wireless devices and the services that support them.

10.     In 2008, Dr. Raleigh formed Headwater to develop mobile operating systems and cloud technology, which today, underpin the mobile phone and app industries. The patents in this action describe and claim some of the extraordinary inventions developed by Dr. Raleigh and the Headwater team.

11.     Smartphones and other mobile devices have become ubiquitous and inseparable components of our daily lives, allowing us to make and receive phone calls, get notifications, download music, upload photos, stream entertainment, transact business, exchange ideas, and keep us connected to our family and friends whether they are down the hall or around the globe. Users can get email, install apps, and browse the internet from these tiny devices by making use of data connectivity services. These devices accomplish these amazing feats by exchanging staggering

amounts of data over the internet using wireless and cellular networks, relying on ubiquitous data connectivity to keep users up-to-date and connected.

12.    Since 2011, mobile device data demand has exploded—increasing by almost 400%—with each user consuming approximately 11.5 gigabytes of data per month. In the aggregate, this equates to approximately 90 exabytes of data consumption per month. *See, e.g.*, https://www.ericsson.com/en/reports-and-papers/mobility-report/mobility-visualizer?f=9&ft=2&r=1&t=11,12,13,14,15,16,17&s=4&u=3&y=2011,2027&c=3. For context: a single exabyte of data is equivalent to one billion gigabytes of data. Said another way, if one gigabyte is the size of the Earth, then an exabyte is the size of the sun. *See, e.g.*, https://www.backblaze.com/blog/what-is-an-exabyte/.

13.    And mobile device data demand shows no sign of slowing down. Between now and 2027, mobile data demand is projected to increase more than three-fold, from 90 exabytes per month to a staggering 282 exabytes per month, with each user consuming an average of 41 gigabytes of data each and every month. *See, e.g.*, https://www.ericsson.com/en/reports-and-papers/mobility-report/mobility-calculator?up=2&bp=1&v=0&c=2; https://www.ericsson.com/en/reports-and-papers/mobility-report/mobility-visualizer?f=9&ft=2&r=1&t=11,12,13,14,15,16,17&s=4&u=3&y=2011,2027&c=3.

## Mobile data traffic

Unit: EB/month
All technologies
All devices
Year: 2011 - 2027

Source: Ericsson (June 2022)



## Ericsson Mobility Calculator

Your example of calculated monthly consumption.

**11.45 GB**

World average 2027 average monthly consumption.

**40.99 GB**



- Downloads
- Messaging traffic
- App traffic
- Audio streaming
- Video streaming

14.     Also in 2008, Dr. Raleigh founded ItsOn Inc., which licensed Headwater's intellectual property and implemented Headwater's technology into software and services that expanded cellular service plan offerings and improved device and data management capabilities. The tools and technologies delivered by ItsOn allowed carriers to implement Headwater's technologies in end-user devices—such as mobile phones and tablets—opening up new business models while also providing greater flexibility to carriers and device manufacturers, allowing them to reduce costs while simultaneously improving their devices and services.

15.     The Headwater technologies disclosed in the Asserted Patents laid the groundwork for many of the infringing features and functionalities that help device manufacturers, wireless carriers, and customers reduce data usage and network congestion, extend battery life by decreasing power consumption, and enable users to stay connected. Among other features, these Headwater technologies enable secure messaging to an end user device and application, allowing software application developers and users to benefit from software updates, timely alerts, fresh content, and notifications to promote products and services.

## PLAINTIFF HEADWATER AND THE PATENTS-IN-SUIT

16.     Plaintiff Headwater was formed in 2011 and has been in continued existence and operation since that time. Headwater is a Texas limited liability company organized under the laws of Texas, with its headquarters at 110 North College Avenue, Suite 1116, Tyler, Texas 75702.

17.     Headwater is the owner of U.S. Patent No. 9,198,117, entitled "Network system with common secure wireless message service serving multiple applications on multiple wireless devices," which issued on November 24, 2015. A copy of the '117 patent is attached to this complaint as Exhibit 1.

7

18.    Headwater is the owner of U.S. Patent No. 9,615,192, entitled "Message link server with plural message delivery triggers," which issued on April 4, 2017. A copy of the '192 patent is attached to this complaint as Exhibit 2.

19.    Headwater is the owner of U.S. Patent No. 10,321,320, titled "Wireless network buffered message system," which issued June 11, 2019. A copy is attached as Exhibit 3.

20.    The Asserted Patents are directed to novel and unconventional improvements to secure data communications. The claimed inventions provided technical solutions to technical problems with prior messaging systems. As more fully explained in the trial testimony of Headwater Research LLC v. Samsung Electronics Co., Ltd., Case No. 2:23-cv-00103 (E.D. Tex.), prior messaging systems had major security flaws and inefficiencies. Such prior art systems failed to adequately enable third-party application servers to message their applications securely and efficiently. The claimed inventions provided novel technical solutions for messaging systems that improved their security and efficiency with unconventional techniques described in the claims. The improvements provided by the Asserted Patents result in substantial benefits to Defendant, who reaps substantial revenues and competitive advantages from its infringement of the Asserted Patents.

## DEFENDANTS AND THE ACCUSED INSTRUMENTALITIES

21.    On information and belief, Defendant Tencent Holdings Limited ("Tencent") is a corporation organized under the laws of People's Republic of China, with principal place of business at Tencent Binhai Building, No. 33, Haitian Second Road, Nanshan District, Shenzhen, 518054.

22.    The Accused Instrumentalities include Defendant's mobile applications and their use of push messaging technology and a push messaging service for push messaging in the United

States, including the PUBG Mobile or WeChat app, and other Defendant applications available in mobile application stores.

23.     Defendant infringes Headwater's patented technology by using push messaging for Defendant's mobile applications offered for sale and/or sold and/or monetized in the United States and supplied to customers in the United States.

24.     Defendant infringes Headwater's patented technology by selling and/or offering for sale Defendant's mobile applications in the United States, and/or through inducing infringement by end-users of Defendant's mobile applications in the United States.

25.     Defendant's mobile applications operates on computers and mobile devices. Defendant operates, places into services, or otherwise controls a server system used to push messages to such applications.

## JURISDICTION AND VENUE

26.     This action arises under the patent laws of the United States, Title 35 of the United States Code.

27.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

28.     This Court has personal jurisdiction over Tencent in this action because Tencent has, directly or through agents and/or intermediaries, committed acts of infringement within this District giving rise to this action, has a regular and established business in this District, and has established minimum contacts with this forum such that the exercise of jurisdiction over Tencent would not offend traditional notions of fair play and substantial justice. Tencent, directly and/or through subsidiaries or intermediaries, conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising its products and/or services in

Texas and the Eastern District of Texas, regularly doing business or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from products and/or services provided to individuals in Texas, and committing acts of infringement of Headwater's patents in this District by, among other things, using Headwater's patented technology for push messaging to Defendant's mobile applications in the United States, selling and/or offering for sale Defendant's mobile applications in the United States, or by inducing infringement by end-users of Defendant's mobile applications in the United States, including Defendant's mobile applications accused of infringement in this case.

29.     Tencent, directly and/or through subsidiaries or intermediaries, have purposefully and voluntarily placed one or more products and/or services in the stream of commerce that practice the Asserted Patents with the intention and expectation that they will be purchased and used by consumers in the Eastern District of Texas. These products and/or services have been and continue to be purchased and used in the Eastern District of Texas.

30.     In addition and/or alternatively, this Court has jurisdiction over Tencent under Federal Rule of Civil Procedure 4(k)(2). This action arises from actions of Tencent directed toward the United States including committing at least a portion of the infringing acts alleged herein and regularly transacting business, soliciting business, and deriving revenue from the sale of goods and services, including infringing goods and services, to individuals in the United States. Therefore, Tencent has purposefully availed itself of the benefits of the United States, including the Eastern District of Texas, and the exercise of jurisdiction over Tencent would not offend traditional notions of fair play and substantial justice.

31.     Venue as to Tencent is proper in this District under 28 U.S.C. §§ 1391(c) and 1400(b). Tencent is a foreign corporation such that venue is proper in this District. Tencent has

committed acts of direct and indirect infringement in this District by, among other things, using, offering to sell, and selling products, services, or systems that infringe the Asserted Patents.

## COUNT 1 – CLAIM FOR INFRINGEMENT OF THE '117 PATENT

32.    Headwater incorporates by reference each of the allegations in the foregoing paragraphs above and further alleges as follows:

33.    On November 24, 2015, the United States Patent and Trademark Office issued U.S. Patent No. 9,198,117, entitled "Network system with common secure wireless message service serving multiple applications on multiple wireless devices." Ex. 1.

34.    Headwater is the owner of the '117 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

35.    The written description of the '117 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

36.    Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '117 patent, and Headwater is entitled to damages for Defendants' past infringement.

37.    Defendants have directly infringed (literally and equivalently) and induced others to infringe the '117 patent by making, using, selling, offering for sale, or importing products, services, and systems that infringe the claims of the '117 patent and by inducing others to infringe the claims of the '117 patent without a license or permission from Headwater, such as for example

instructing users of Defendant's mobile applications to enable push messaging and use of the '117 patent.

38.    The Accused Instrumentalities include Defendant's mobile applications and their use of push messaging technology and a push messaging service for push messaging in the United States.

39.    Defendant infringes Headwater's patented technology, such as by Defendants' mobile applications using push messaging which are used and/or offered for sale and/or sold and/or monetized in the United States and supplied to customers in the United States.

40.    Defendant also infringes Headwater's patented technology by selling and/or offering for sale Defendant's mobile applications in the United States, and/or through inducing infringement by end-users of Defendant's mobile applications in the United States.

41.    The infringement of the '117 patent is also attributable to Defendants. Defendants direct and control use of the Accused Instrumentalities to perform acts that result in infringement of the '117 patent. Defendant places the accused system into service to push messages to Defendant's end-user applications. Defendant's end-user applications include software functionality for using push messaging in infringement of the '117 patent. Defendant controls the initiation of the push message, the message contents, the recipient device and application of the push messages, the behavior of the end-user device upon receipt of the push message (e.g. notification or software update), and/or the delivery of the push message. Defendant benefits from placing the push messaging system into service by generating incremental revenues and profits, increasing user engagement, updating software, and sending timely alerts.

42.    For example, attached as Exhibit 4 is a chart setting forth an exemplary description of at least one example of Defendants' infringement of at least claim 1 of the '117 patent.

43.    Defendants also knowingly and intentionally induce and contribute to infringement of the '117 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, at least since receipt of this Complaint, Defendant has had knowledge of or has been willfully blind to its infringement of the '117 patent.

44.    Despite this knowledge of the '117 patent, Defendants continue to actively encourage and instruct its customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '117 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities and otherwise perform the infringing acts, despite their knowledge of the '117 patent, thereby specifically intending for and inducing its customers to infringe the '117 patent through the customers' normal and customary use of the Accused Instrumentalities.

45.    Defendants have infringed multiple claims of the '117 patent, including independent claim 1. By way of example only, the normal and customary use of push messaging by Defendant and Defendant's mobile applications infringes an exemplary claim of the '117 patent, as in the description set forth in Exhibit 4.

46.    Defendants know how the Accused Instrumentalities are used and know, or are willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '117 patent.

47.    Defendants have induced, and continue to induce, infringement of the '117 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and

instructions to its customers to enable push messaging; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

48.    Defendant offers to sell or sells within the United States or imports into the United States a component constituting a material part of Headwater's invention, knowing the same to be especially made or adapted for use in infringement, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

49.    Headwater has been damaged by Defendant's infringement of the '117 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT 2 – CLAIM FOR INFRINGEMENT OF THE '192 PATENT

50.    Headwater incorporates by reference each of the allegations in the foregoing paragraphs above and further alleges as follows:

51.    On April 4, 2017, the United States Patent and Trademark Office issued U.S. Patent No. 9,615,192, entitled "Message link server with plural message delivery triggers."  Ex. 3.

52.    Headwater is the owner of the '192 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

53.    The written description of the '192 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

54.    Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '192 patent, and Headwater is entitled to damages for Defendants' past infringement.

55.    Defendants have directly infringed (literally and equivalently) and induced others to infringe the '192 patent by making, using, selling, offering for sale, or importing products, services, and systems that infringe the claims of the '192 patent and by inducing others to infringe the claims of the '192 patent without a license or permission from Headwater, such as for example instructing users of Defendant's mobile applications to enable push messaging and use of the '117 patent.

56.    The Accused Instrumentalities include Defendant's mobile applications and their use of push messaging technology and a push messaging service for push messaging in the United States.

57.    Defendant infringes Headwater's patented technology by Defendant's mobile applications using push messaging for mobile applications offered for sale and/or sold and/or monetized in the United States and supplied to customers in the United States.

58.    Defendant also infringes Headwater's patented technology by selling and/or offering for sale Defendant's mobile applications in the United States, and/or through inducing infringement by end-users of Defendant's mobile applications in the United States.

59.    The infringement of the '192 patent is also attributable to Defendants. Defendants direct and control use of the Accused Instrumentalities to perform acts that result in infringement of the '192 patent. Defendant places the accused system into service to push messages to Defendant's end-user applications. Defendant's end-user applications include software functionality for using push messaging in infringement of the '192 patent. Defendant controls the initiation of the push message, the message contents, the recipient device and application of the push messages, the behavior of the end-user device upon receipt of the push message (e.g. notification or software update), and/or the delivery of the push message. Defendant benefits from

placing the push messaging system into service by generating incremental revenues and profits, increasing user engagement, updating software, and sending timely alerts.

60.     For example, attached as Exhibit 5 is a chart setting forth an exemplary description of at least one example of Defendants' infringement claim 1 of the '192 patent.

61.     Defendants also knowingly and intentionally induce and contribute to infringement of the '192 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge or were willfully blind of the '192 patent and the infringing nature of the Accused Instrumentalities at least since the filing of the complaint.

62.     Despite this knowledge of the '192 patent, Defendants continue to actively encourage and instruct its customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '192 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '192 patent, thereby specifically intending for and inducing its customers to infringe the '192 patent through the customers' normal and customary use of the Accused Instrumentalities.

63.     Defendants have infringed multiple claims of the '192 patent, including independent claim 1. By way of example only, the normal and customary use of push messaging by Defendant and Defendant's mobile applications infringes an exemplary claim of the '192 patent, as in the description set forth in Exhibit 5.

64.     Defendants know how the Accused Instrumentalities are used and know, or have been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '192 patent.

65.     Defendants have induced, and continue to induce, infringement of the '192 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to its customers to enable push messaging; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

66.     Defendant offers to sell or sells within the United States or imports into the United States a component constituting a material part of Headwater's invention, knowing the same to be especially made or adapted for use in infringement, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

67.     Headwater has been damaged by Defendant's infringement of the '192 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT 3 – INFRINGEMENT OF THE '320 PATENT

68.     Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

69.     On June 11, 2019, the United States Patent and Trademark Office issued U.S. Patent No. 10,321,320, titled "Wireless network buffered message system."

70.     Headwater is the owner of the '320 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

71.     The written description of the '320 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time

of the invention.

72.    Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '320 patent, and Headwater is entitled to damages for Defendants' past infringement.

73.    Defendants have directly infringed (literally and equivalently) and induced others to infringe the '320 patent by making, using, selling, offering for sale, or importing products, services, and systems that infringe the claims of the '320 patent and by inducing others to infringe the claims of the '320 patent without a license or permission from Headwater, such as for example instructing users of Defendant's mobile applications to enable push messaging and use of the '320 patent.

74.    The Accused Instrumentalities include Defendant's mobile applications and their use of push messaging technology and a push messaging service for push messaging in the United States.

75.    Defendant infringes Headwater's patented technology by Defendants' mobile applications using push messaging for mobile applications offered for sale and/or sold and/or monetized in the United States and supplied to customers in the United States.

76.    Defendant also infringes Headwater's patented technology by selling and/or offering for sale Defendant's mobile applications in the United States, and/or through inducing infringement by end-users of Defendant's mobile applications in the United States.

77.    The infringement of the '320 patent is also attributable to Defendants. Defendants direct and control use of the Accused Instrumentalities to perform acts that result in infringement of the '320 patent. Defendant places the accused system into service to push messages to Defendant's end-user applications. Defendant's end-user applications include software

functionality for using push messaging in infringement of the '320 patent. Defendant controls the initiation of the push message, the message contents, the recipient device and application of the push messages, the behavior of the end-user device upon receipt of the push message (e.g. notification or software update), and/or the delivery of the push message. Defendant benefits from placing the push messaging system into service by generating incremental revenues and profits, increasing user engagement, updating software, and sending timely alerts.

78.    For example, attached as Exhibit 6 is a chart setting forth an exemplary description of at least one example of Defendants' infringement of claim 1 of the '320 patent.

79.    Defendants also knowingly and intentionally induce and contribute to infringement of the '320 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge or were willfully blind of the '320 patent and the infringing nature of the Accused Instrumentalities at least since the filing of the complaint.

80.    Despite this knowledge of the '320 patent, Defendants continue to actively encourage and instruct its customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '320 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '320 patent, thereby specifically intending for and inducing its customers to infringe the '320 patent through the customers' normal and customary use of the Accused Instrumentalities.

81.    Defendants have infringed multiple claims of the '320 patent, including independent claim 1. By way of example only, the normal and customary use of push messaging by Defendant and Defendant's mobile applications infringes an exemplary claim of the '320 patent, as in the description set forth in Exhibit 6.

82.     Defendants know how the Accused Instrumentalities are used and know, or have been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '320 patent.

83.     Defendants have induced, and continue to induce, infringement of the '320 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to its customers to enable push messaging; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

84.     Defendant offers to sell or sells within the United States or imports into the United States a component constituting a material part of Headwater's invention, knowing the same to be especially made or adapted for use in infringement, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

85.     Headwater has been damaged by Defendant's infringement of the '320 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages

## JURY DEMAND

86.     Headwater demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

## RELIEF REQUESTED

Headwater prays for the following relief:

A.     A judgment in favor of Headwater that Defendants have infringed the Asserted Patents, and that the Asserted Patents are valid and enforceable;

B.     A judgment and order requiring Defendants to pay Headwater past and future damages arising out of Defendants' infringement of the Asserted Patents in an amount no less than

a reasonable royalty, costs, expenses, and pre- and post-judgment interest for its infringement of the asserted patents, as provided under 35 U.S.C. § 284;

C.    A permanent injunction prohibiting Defendants from further acts of infringement of the Asserted Patents;

D.    A judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to Headwater, including, without limitation, pre-judgment and post-judgment interest;

E.    A judgement that Defendants' infringement is willful and enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284

F.    A finding that this case is exceptional under 35 U.S.C. § 285, and an award of Headwater' reasonable attorney's fees and costs; and

G.    Any and all other relief to which Headwater may be entitled.

Dated:   September 18, 2025

Respectfully submitted,

*/s/ Marc Fenster*
Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Brian Ledahl
CA State Bar No. 186579
Email: bledahl@raklaw.com
Ben Wang
CA State Bar No. 228712
Email: bwang@raklaw.com
Paul Kroeger
CA State Bar No. 229074
Email: pkroeger@raklaw.com
Neil A. Rubin
CA State Bar No. 250761
Email: nrubin@raklaw.com
Kristopher Davis
CA State Bar No. 329627
Email: kdavis@raklaw.com
James S. Tsuei
CA State Bar No. 285530
Email: jtsuei@raklaw.com
Philip Wang
CA State Bar No. 262239
Email: pwang@raklaw.com
James Pickens
CA State Bar No. 307474
Email: jpickens@raklaw.com
James Milkey
CA State Bar No. 281283
Email: jmilkey@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139
Email: jwietholter@raklaw.com
Qi Peter Tong
TX State Bar No. 24119042
Email: ptong@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025

Telephone: 310-826-7474

**ATTORNEYS FOR PLAINTIFF,**
**Headwater Research LLC**